**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: 11-06320-jw

**ORDER CONVERTING CASE TO CHAPTER 7**

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby **ORDERED**.

**FILED BY THE COURT**
**04/25/2012**



*John E Waites*
Chief US Bankruptcy Judge
District of South Carolina

Entered: 04/25/2012

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

In re:

Richmond L. Halls,

Debtor.

Case No. 11-06320-jw
Chapter 11

## ORDER CONVERTING CASE TO CHAPTER 7

This matter comes before the Court on the motion of the United States Trustee (UST) to convert this case to chapter 7. The motion was filed pursuant to 11 U.S.C. §1112(b)(1) and (4)(K). The debtor opposed the motion. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding. In accordance with Fed. R. Bankr. P. 7052 and 9014(c),[1] the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Richmond L. Halls' chapter 11 petition was filed on October 10, 2011. In his motion to convert and at the hearing on the motion, the UST challenged the veracity of the debtor's disclosures in his schedules and statements and in testimony relating to a number of assets or business interests. The Court will address the debtor's actions related to the various issues raised.

**Halls of Cross, LLC**

On October 24, 2011, the debtor filed schedules and statements in his case. On his Schedule B, Personal Property, on item 13, the debtor listed his ownership of Halls of Cross, Inc. (HOC), an entity which had been a debtor in a Chapter 7 proceeding in the Northern District of

---

[1] Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq*., shall be by section number only. Further references to the Federal Rules of Bankruptcy Procedure shall be by Rule number only.

Georgia. (Halls of Cross, LLC, Case No. 10-602240-mhm). The debtor disclosed on his Schedule B that HOC had no value. The debtor amended his Schedule B on November 17, 2011, and his ownership of HOC with no value was unchanged. The debtor did not disclose any ownership interest in trailers or other equipment used in business.

At his meeting of creditors held on November 8, 2011, the debtor testified under oath that HOC had no assets at the time that its chapter 7 case was completed.

On February 15, 2012, the debtor was examined pursuant to Rule 2004 by the attorney for Navistar Financial Corporation (Navistar). Navistar is a creditor of the debtor by virtue of his personal guaranty of a debt owed to Navistar by HOC, which debt was secured by six trailers owned by HOC. The trailers remained in the possession of the debtor after the HOC bankruptcy was closed. Although the debtor, through his attorney, had repeatedly represented to Navistar that he did not know where the trailers were located, at his Rule 2004 examination, the debtor testified that he had transferred two of the trailers to his son, Charles Halls, and the remaining trailers were being used by R & C Trucking, LLC (R&C), a company the debtor had formed and which was operating out of his house.

The debtor's representations made in his schedules and at his meeting of creditors regarding the existence and value of assets remaining from the HOC bankruptcy were not truthful. The debtor was also evasive in his responses to Navistar in its efforts to locate its collateral.

**24 acre tract of land in Berkeley County**

On the debtor's original Schedule A, filed on November 4, 2011, the debtor listed numerous interests in real estate. However, the debtor failed to disclose his ownership of a 24-acre tract of undeveloped land in Berkeley County on which there are no liens. After the UST's office discovered the debtor's interest in this property and questioned the debtor about his ownership, the debtor included the tract in an amended Schedule A he filed on November 17,

2011.  The debtor's amended schedule A stated the value of the property to be $25,200.

**R&C Trucking, LLC**

The schedules and statements filed by the debtor on October 24, 2011, and the amendments to the schedules and statements filed by the debtor on November 17, 2011, are silent as to the entity known as R&C Trucking, LLC (R&C).  Neither the original or amended Schedule B reflect that the debtor has any ownership interest in R&C.  Neither the debtor's original nor amended Schedule I, Current Income, reflect that the debtor or his wife receive any income from the operation of R&C or employment at R&C.  The debtor's original and amended Statement of Financial Affairs (SOFA) show no income received by the debtor from the operation of, or employment at, R&C in 2009, 2010, or 2011.  Neither the debtor's original nor amended SOFA show that the debtor owned or operated R&C during the six years preceding the filing of his case, nor do those documents reflect a transfer of R&C during the two years preceding the filing of the case.

At his meeting of creditors, the debtor testified that neither he nor his wife have ever received income from R&C.  The debtor testified at his meeting of creditors that he has no position with R&C whatsoever.  The debtor testified that he had transferred R&C to his wife two years earlier.  At his Rule 2004 examination, the debtor testified that he could not remember when he had formed R&C.  He could not remember when he had transferred R&C to his wife.  He could not even remember whether the transfer had been before or after he filed his bankruptcy case.

During the debtor's Rule 2004 examination, it became clear that the debtor's involvement in R&C was much different than he had previously characterized.  During the examination, the debtor conceded that he knew the location of Navistars' collateral and most of it was being used by R&C.  When asked if he would turn in the collateral to Navistar, the debtor testified that he

and his wife needed the trailers badly and that if Navistar took the collateral he would be "finished."

The records of R&C's SCBT bank account from January 1, 2011 through February 29, 2012, show that during this period, the debtor signed the overwhelming majority of the checks written on the R&C account which checks numbered in the hundreds. The debtor signed numerous checks before and after the filing of his case. Also during this period, the debtor wrote checks to himself or made cash withdrawals from the account of R&C totaling more than $340,000.

The debtor's SOFA reflects that the debtor paid his attorney a portion of his retainer in the amount of $3,600 on October 4, 2011. Also on October 4, 2011, the debtor withdrew $3,600 in cash from the SCBT account of R&C, and it appears that these funds were used to purchase a cashier's check to make the retainer payment.

It is not clear why the debtor received in excess of $340,000 from the bank account of R&C, primarily during 2011. Only a small percentage of those funds went into the debtor's personal bank account at SCBT. What is clear is that the debtor did receive income from R&C during 2011, and the debtor has a very extensive role in the operation of that entity. For whatever reason, the debtor did not want to make known his involvement in R&C and he repeatedly gave false statements in his bankruptcy schedules and statements, and in his testimony under oath regarding his involvement with R&C.

The debtor has failed to filed a plan and disclosure statement within the time required by SC LBR 3016-1(a).

The debtor has cured his deficient quarterly fee owing to the UST pursuant to 28 U.S.C. § 1930(a)(6).

## CONCLUSIONS OF LAW

For a motion under § 1112(b), the movant bears the initial burden to establish cause of

dismissal or conversion.

>   Section 1112(b)(1) provides as follows:
>
>>   Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of the creditors and the estate.
>
>   Section 1112(b)(2) provides as follows:
>
>>   The Court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing is not in the best interests of the creditors and the estate, and the debtor or any other party interest establishes that -
>>
>>>   (A) there is reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>>
>>>   (B) the grounds for granting such relief include an act or omission of the debtor other than paragraph (4)(A) –
>>>
>>>>   (i) for which there exists a reasonable justification for the act or omission; and
>>>>
>>>>   (ii) that will be cured within a reasonable period of time fixed by the court.

The UST has met his burden of establishing that cause exists for conversion of this case to chapter 7. From the outset of this case, the debtor has failed to provide truthful disclosures regarding his assets, income, and business affairs. In his schedules and statements and in his sworn testimony at his meeting of creditors, the debtor has maintained that he has no role in the affairs of R&C and he has denied receiving income from R&C. The records of R&C's bank account clearly show these statements are false. It is clear that the debtor is, at the very least, an

integral player in the operation of R&C. He controls the purse strings of R&C. The debtor has received income from R&C, and more than $340,000 of R&C funds went to him in checks and cash withdrawals in only a 14-month period. Although the debtor offered no explanation regarding his use of these funds, even if the debtor had been able to demonstrate that these funds went predominantly to pay the expenses of R&C, by doing so he would have reinforced the fallacy of his claim that he had no role in the affairs of R&C.

The debtor also failed to disclose his possession of assets which remained from the chapter 7 bankruptcy case of HOC and to testify truthfully with regard to those assets. The debtor also failed to disclose a 24-acre parcel of land which he held lien-free.

The integrity of the bankruptcy system is dependent upon the accuracy of disclosures made in the schedules and statements filed by debtors and the truthfulness of testimony which they provide. No debtor should expect to receive the benefits and opportunities offered by the bankruptcy process while unwilling to meet these basic responsibilities. For these reasons, the Court finds that cause exists warranting conversion of this case to chapter 7 pursuant to § 1112(b)(1).

During the time which elapsed between the filing of the UST 's motion to convert and the hearing on the motion, the debtor failed to file a plan and disclosure statement within the time required by SC LBR 3016-1. Thus, cause pursuant to § 1112(b)(4)(J) exists.

No party, including the debtor, has established that there is a reasonable justification for the acts of the debtor which form the basis for the Court's decision.

The Court has considered whether conversion of the case or dismissal of the case is in the best interests of creditors. Because the record reflects that there are unencumbered assets in the

estate which will likely provide a distribution to unsecured creditors, the Court has determined that conversion of the case to chapter 7 is in the best interests of the estate and its creditors.

## **CONCLUSION**

For the foregoing reasons, it is hereby

ORDERED THAT this case be, and hereby is, converted to chapter 7 pursuant to the provisions of 11 U.S.C. § 1112(b)(1) and (4)(J); and it is further

ORDERED that the chapter 7 case remain assigned to the undersigned; and it is further

ORDERED that the above-named debtor file in the office of the Clerk of this Court, within fourteen (14) days of the entry of the order:

(1) final statements of profit and loss and cash position through the date of conversion,

(2) additional schedules (Schedule D - Creditors Holding Secured Claims or Interests, Schedule E - Creditors Holding Unsecured Priority Claims or Interests, Schedule F - Creditors Holding Unsecured Non-Priority Claims or Interests) showing claims or interests against the debtor arising subsequent to the granting of the Chapter 11 relief,

(3) a mailing matrix,

(4) revised schedules (Schedule A - Real Property, Schedule B - Personal Property, Schedule C - Property Claimed As Exempt, Schedule I - Current Income of Individual Debtor, Schedule J - Current Expenditures of Individual Debtor),

(5) description of any post-petition transactions that should be reflected in a Statement of Affairs filed as of the date of conversion, and

FURTHER ORDERED that the above-name debtor file in the office of the Clerk of the Court a Statement of Intention as to property encumbered by consumer debt, if applicable, within thirty (30) days of the filing of this order of conversion or before the first date set for the meeting of creditors, whichever is earlier. Failure to file the statement o c{ result in the Court's entry of an order dismissing this case when the clerk certifies that neither the statement nor a motion to extend the time for filing the same has been filed within the time limit set forth above.

IT IS FURTHER ORDERED that

The debtor shall immediately turn over to the Chapter 7 interim trustee all estate property and records which the trustee shall reasonably request.

The debtor shall immediately cease all business operations and take all necessary and appropriate action to insure that estate assets are properly preserved for the Chapter 7 interim trustee.

The debtor shall immediately relinquish control of its operations and estate property to the interim trustee and permit the interim trustee and his agents unlimited reasonable access to estate property.

It is expected that counsel for the debtor shall cooperate fully with the interim trustee, upon the appointment by the United States Trustee of such interim trustee, and take all reasonable action to insure that the debtor complies with this order.

AND IT IS SO ORDERED.